IN THE UNITED STATES COURT
FOR THE WESTERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| SHAKEEL MUSTAFA, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | Case No. 1:17-cv-00834 |
| | § | |
| XCENTRIC VENTURES, LLC, | § | |
| | § | |
| Defendant. | § | |

## COMPLAINT

Plaintiff Shakeel Mustafa states the following for his complaint against

Defendant Xcentric Ventures, LLC:

### Introduction

1.   This is a case seeking damages and injunctive relief against the defendant,

which operates a website called "*RipoffReport.com.*"  Through its website, the defendant

has created and developed, published or republished, defamatory and false information

about the plaintiff, causing him substantial harm as alleged below.  Further, the

defendant has and continues to engage in deceptive trade practices through various

attempts to encourage the plaintiff to donate to pet causes or to spend thousands of

dollars on an internal, sham "arbitration" to purportedly remove defamatory posts on

its website when neither the donation nor "arbitration" is necessary to remove the

posts.  Despite informal attempts to resolve this dispute, Plaintiff has no ability to

obtain the remedy he seeks other than through this Court.

## Parties

2. **Plaintiff Shakeel Mustafa** is an individual residing in this judicial district in Round Rock, Texas.

3. **Defendant Xcentric Ventures, LLC,** is an Arizona limited liability company. Xcentric Ventures, LLC, can be served on its registered agent:  Dickinson Wright PLLC, 1850 N. Central Ave, Ste. 1400, Phoenix, Arizona  85004.

## Jurisdiction and Venue

4. This Court has subject matter jurisdiction based on diversity of the parties under 28 U.S.C. § 1332(a), because the parties are citizens of different states and the amount in controversy exceeds $75,000, excluding interest and costs.

5. This Court further has personal jurisdiction over the defendant because the defendant engaged in conduct subjecting itself to the jurisdiction of this Court, based on but not limited to the following actions, in which the defendant

(a) solicited and continues to solicit business from Plaintiff and others in Texas and in this judicial district through its website;

(b) solicited donations from Plaintiff in connection with the substance of his complaint in this action; and

(c) published and continues to publish defamatory information about Plaintiff causing him harm in this judicial district.

6. Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiff's claims occurred in this judicial district.

2

## Facts

7.   For years, Xcentric Ventures, LLC (hereafter "Xcentric" or "Ripoff Report") has operated a website at "RipOffReport.com."  Xcentric actively encourages and solicits visitors to its website to post complaints or other negative information about businesses, professionals and individuals, and then Xcentric just happens to offer for sale to targets of those complaints certain remedial or preventative services to allegedly restore their damaged reputation.

8.   Ripoff Report also solicits and offers to victims of false attacks on its website a "VIP arbitration process," which purports to provide an "arbitration" costing at least $2,000.00, administered by and paid to Xcentric, with no guarantee that the defamatory, false or tortious post will be removed even if the victim of a false report prevails in the so-called arbitration.  Indeed, Ripoff Report has an express policy of not removing any post or report.  The "arbitration" is thus a sham, at best.

9.   In or around late 2016 or early 2017, a person or persons unknown to Plaintiff Shakeel Mustafa posted complaints about him on Ripoff Report, falsely accusing him of owning a website called "*leagle.com*" and of extorting persons to remove information from that website.  These posts and related, subsequent posts further called Mustafa a "criminal, con artist, sociopath," and "manipulator," as well as falsely accuse him of engaging in other "illegal behavior."

10. The false posts on RipOff Report about Mustafa and his alleged ownership of the "leagle.com" website specifically contained his home address and telephone number.  As a result, he received several harassing calls based on the false association of him to the "leagle.com" website.  The harassment reached a point where Mustafa was afraid for the security of his family and himself, so he reported the harassment to local law enforcement authorities in January 2017.

11. Around this same time, Mustafa contacted the editor of Ripoff Report and Xcentric's co-owner, Ed Magedson, objecting to the defamatory and false nature of the posts accusing Mustafa of owning the "leagle.com" website that persons complained about and accusing Mustafa of related criminal and other misconduct.

12. Magedson and Mustafa traded several emails over the next few weeks about the posts, specifically discussing the fact that Mustafa did not own and had nothing to do with "leagle.com."

13. On information and belief, Xcentric has a team of employees or agents who review and investigate certain posts on RipOff Report, as well as edit, develop and create the posts' content, titles and headings.  Thus, RipOff Report is not just a passive website that simply does nothing more than allow anonymous posters to complain about individuals and businesses.  Rather, Xcentric indisputably takes an active role in creating and developing the content itself and essentially owns, publishes or republishes various posts, as it did in this case.  Indeed, Xcentric states on its RipOff

Report website that it *never* removes a post, even if a third-party author asks to remove it, and further leads visitors to believe that the posts are the property of RipOff Report.

14. Mustafa provided Magedson and Xcentric proof that the published and defamatory allegations against him were false.  Critical to this dispute, however, Magedson undertook his own investigation into the posts and false statements about Mustafa and "leagle.com" and, based on his investigation, temporarily removed the defamatory posts about Mustafa.

15. In connection with Mustafa's asking Magedson to remove the defamatory posts, Magedson also solicited donations from Mustafa to a dog rescue project Magedson claimed to be affiliated with.  From this solicitation and related comments, Mustafa believed that by donating to Magedson's pet cause – which he did – this donation would further help Mustafa get the defamatory statements about him removed from the Internet.  And for a short time it did.

16. Later, however, Magedson continued to personally and directly investigate the false connection between Mustafa and "leagle.com" and, based on this investigation, Magedson claimed to have proof of Mustafa's ownership of the "leagle.com" website.  Magedson, however, never shared that "proof" with Mustafa.

17. Xcentrix and its owner, agent or employee Magedson thus developed and created false information, in whole or in part, about Mustafa and subsequently published and republished the false and defamatory accusations against Mustafa by

5

reposting these accusations.  These new posts or reposts appeared on RipOff Report in or around late January or February 2017.

18.  Mustafa pleaded with Magedson and Xcentric to remove the false and defamatory accusations but they refused to remove the posts that they had created and developed, in whole or in part, separately from what third parties themselves may have previously posted.  Thus, Mustafa's claims regarding the posts in this action are partially based on and directed toward Xcentric and Magedson's own creation and development of the unlawful posts, in whole or in part, rather than toward the third parties (if there were any third parties) who purportedly initiated the posts.

19. Mustafa was then forced to retain counsel to assist him in removing the defamatory content on RipOff Report.  Throughout May 2017, Mustafa's counsel contacted both Magedson and RipOff Report's purported "Legal Department" to have them remove the defamatory content.  Magedson and RipOff Report's Legal Department advised Mustafa's counsel to pursue the "arbitration" that Xcentric offers to victims of these malicious and false postings.  Of course this expensive, unnecessary kangaroo court guarantees no relief even for prevailing parties, since RipOff Report claims to have an express and incredible policy of *never* removing a post.

20.  Later, on May 24, 2017, RipOff Report's anonymous "Legal Department" advised Mustafa's counsel via email that RipOff Report also has a policy of redacting, but not removing, defamatory posts that are the basis of police reports relating to an

6

harassment investigation.  Before the May 24 email from RipOff Report, Mustafa in fact had reported harassment to local law enforcement authorities in January 2017 relating to the false posts on RipOff Report and calls he received as a result of those posts.

21. Based on this new revelation by Defendant about another way to secure relief, Mustafa's counsel shared Mustafa's official harassment report to law enforcement with RipOff Report's anonymous "Legal Department."  In response, the "Legal Department" then arbitrarily and capriciously moved the goal posts and claimed this additional proof was insufficient because the police report was not against the original author of the false and defamatory posts.  Of course Mustafa has no idea who the original poster was since RipOff Report does not divulge that information.

22. Later, in an email on May 25, 2017, Xcentric, RipOff Report and their anonymous "Legal Department" then claimed to Mustafa and his counsel that "This will be our last communication. **We consider this matter closed.**"  (Original emphasis)

23.  This matter however is *not* closed.  Mustafa continues to be harmed by the false and malicious statements and accusations against him – statements and accusations which Xcentric and its agents investigated, created and developed in whole or in part, despite having the true facts to the contrary, and continue to publish and republish.  Mustafa is therefore left with no recourse but to seek legal and equitable relief in this case through the claims set forth below.

## Claims for relief

### *First claim – Libel*

24. Plaintiff Mustafa incorporates by reference paragraphs 1 through 23 of his Complaint as if fully set forth in this paragraph.

25. Defendant Xcentric, through its agents and its website RipOffReport.com, created and developed in whole or in part, and then published and republished several false statements about Mustafa, accusing him of criminal behavior and other malicious misconduct, and of owning or being associated with the website "leagle.com," thereby causing him substantial damages, including but not limited to emotional distress, injury to his professional standing, and economic damages yet to be determined.

26. Xcentric's conduct toward Mustafa has been not only negligent, but also grossly negligent, reckless, intentional or malicious, thereby entitling him to punitive or exemplary damages.

27. Further, the nature of the defamation by Xcentric toward Mustafa constitutes libel per se for which his damages may be presumed.


### *Second claim – Negligence*

28. Plaintiff Mustafa incorporates by reference paragraphs 1 through 27 of his Complaint as if fully set forth in this paragraph.

8

29. Defendant Xcentric owed Mustafa a duty of care to ensure that the information it published or republished on its RipOff Report website was not false or defamatory, particularly after it undertook to investigate, create and develop on its own part the false and libelous statements about Mustafa on its website.

30. Despite its duty of care, Xcentric breached that duty toward Mustafa when it published or republished false and libelous information about him that Xcentric knew or should have known would and did cause harm to Mustafa, especially after numerous objections from Mustafa and his counsel pointing out to Xcentric the falsity of its statements about Mustafa and the consequent harm to him.

31. As a direct and proximate result of Xcentric's negligence, Mustafa has been harmed.  Further, because Xcentric's acts and omissions have been not only negligent, but also grossly negligent, reckless, intentional or malicious, such conduct by Xcentric entitles Mustafa to punitive or exemplary damages.

### *Third claim – Invasion of privacy*

32. Plaintiff Mustafa incorporates by reference paragraphs 1 through 31 of his Complaint as if fully set forth in this paragraph.

33. Based on the conduct described above, Defendant Xcentric appropriated Mustafa's name for value associated with it.

34. Xcentric received some value or benefit from appropriating Mustafa's name, because Xcentric published and republished postings about Mustafa despite his objection and proof that the information concerning him was false.  Indeed, soliciting negative complaints about businesses or individuals is the very essence of Xcentric's commercial activities at RipOff Report, in addition to its then subsequently soliciting protection money from victims of such complaints to allegedly restore their damaged reputation.

35. As a direct and proximate result of the conduct above and appropriation of his name, Mustafa has been damaged and suffered substantial injury.


***Third claim – Violation of the Texas Deceptive Trade Practices Act (DTPA)***

36.   Plaintiff Mustafa incorporates by reference paragraphs 1 through 35 of his Complaint as if fully set forth in this paragraph.

37. Mustafa brings this claim under the Texas Deceptive Trade Practices Act (DTPA), Tex. Bus. & Com. Code § 17.41 *et seq*.

38. Mustafa is a "consumer" under § 17.45(4) of the DTPA, in that he sought services from Defendant Xcentric to remove or remediate the false and defamatory posts, irrespective of their authorship, on its RipOff Report website.

39. Xcentric is a "person" under § 17.50(a)(1) of the DTPA that can be and is liable for violating the DTPA.

40. After Mustafa contacted Xcentric seeking to have the false and defamatory statements about him removed, and in connection with his seeking services to remove the posts from RipOff Report, Xcentric engaged in a course of conduct that violated the DTPA, including but not limited to one or more of the following respects:

(a) Misleading Mustafa to believe that by donating to some pet rescue organization, such donation could improve his chances in getting defamatory postings removed from RipOff Report; consequently, in reliance on this belief Mustafa made a donation as suggested by RipOff Report's editor Magedson, but that donation only resulted in temporary removal of the postings, contrary to the inducement by Magedson;

(b) Encouraging Mustafa or his counsel to pursue "arbitration" administered by Xcentric, at an outrageous cost, with no choice in selecting arbitrators, no apparent procedures for any discovery, and a demand for a complete release for Xcentric, regardless of its responsibility or involvement in defamatory posts on its website; further, even if Mustafa prevailed in the "arbitration," there is no guarantee that the defamatory postings would be removed;

(c) Encouraging Mustafa to pursue a bogus and costly "arbitration" process when, by its own admission, such "arbitration" apparently was not necessary to obtain relief; however, when Xcentric's Legal Department advised that defamatory postings could be removed if the content is also the subject of harassment complaints reported to law enforcement authorities and Mustafa offered proof of filing such a complaint with local police, Xcentric refused to remove the defamatory posts and changed its "policy" for removing such posts with the intent of forcing Mustafa to pursue the bogus "arbitration" process or other options for removal.

41.  The conduct described above by Xcentric violates the DTPA in one or more of the following respects:

(a) Xcentric engaged in an unconscionable action or course of conduct with respect to its dealings with Mustafa and his attempts to seek removal of the defamatory posts, in violation of § 17.50(a)(3) of the DTPA;

(b) Xcentric caused Mustafa to believe that by donating to a pet cause sponsored by Magedson, Mustafa would enhance his ability to remove the defamatory posts, thereby causing confusion or misunderstanding as to the affiliation between Magedson, his pet cause, and RipOff Report, in violation of §§ 17.46(b)(3) and 17.46(b)(5) of the DTPA;

(c) Xcentric encouraged Mustafa to participate in its outrageously costly "arbitration" process to obtain removal of the defamatory posts; but such "arbitration" did not guarantee removal of the posts, nor was it even necessary to participate in any "arbitration" to have such posts removed according to Xcentric's secret "policy" that it changed when Mustafa met the terms of the policy.  Despite Mustafa's relying on and satisfying Xcentric's secret policy for removing certain posts from its website, and RipOff Report's terms of service, Xcentric refused to remove the posts.  The conduct by Xcentric described above violates §§ 17.46(b)(5), 17.46(b)(7), 17.46(b)(12), and 17.46(b)(13) of the DTPA.

42. Xcentric knowingly and intentionally engaged in the acts and omissions described above in its course of conduct toward Mustafa.

43. As a direct and proximate result of Xcentric's acts and omissions, Mustafa has suffered damages, including but not limited to economic damages, lost time incurred in trying to remove the defamatory posts, and mental anguish or emotional distress.

## Conditions precedent have been satisfied

44.  Mustafa has complied with any and all conditions precedent to bringing this action against Xcentric, including providing any necessary notices, or in the alternative such conditions would be futile or waived by Xcentric's conduct described above.

## Request for Temporary Injunction

45.  Plaintiff Mustafa incorporates by reference paragraphs 1 through 44 of his Complaint as if fully set forth in this paragraph.

46.  Mustafa will suffer irreparable harm, and he does not have any adequate remedy at law, if Xcentric is not enjoined during the pendency of this lawsuit from continuing to publish any of the posts about Mustafa on RipOffReport.com that are at issue in this lawsuit and which falsely accuse him of owning "leagle.com," or falsely accuse him of criminal conduct or other misconduct.

47.  There is a substantial likelihood that Mustafa will prevail on the merits because the facts as alleged should not be disputed and are supported by several of Xcentric's own emails and website information, and Xcentric's conduct toward Mustafa as a matter of equity warrant an injunction.  At minimum, Mustafa has alleged facts establishing defamation or libel *per se*, for which his harm in presumed.  *See, e.g., Hancock v. Variyan*, 400 S.W.3d 59, 63-64 (Tex. 2013) (explaining defamation claims); *Leyendecker & Assocs. v. Wechter*, 683 S.W.2d. 369, 374 (Tex. 1984) (statement imputing criminal conduct is libel *per se*).  Further, Xcentric will not be able to demonstrate any

13

material harm if it were enjoined and ordered to remove the posts that defame Mustafa in this case.

48.  The harm Mustafa faces by continuing to be subject to the false and libelous publications by Xcentric outweighs any harm that Xcentric might possibly sustain if a preliminary injunction were granted.

49.  Issuance of a preliminary injunction would not adversely affect any public interest or public policy because the public would in fact benefit by not having false and misleading information published on the Internet concerning either Mustafa or the owner of the website that anonymous posters are complaining about – i.e., "leagle.com."

 50.  Mustafa is willing to post a bond if the Court determines it appropriate for him to do so.

51.  Mustafa asks the Court to set his request for preliminary injunction for hearing at the earliest possible time and, after such hearing, issue a preliminary injunction against Xcentric ordering it to remove the defamatory posts against Mustafa.

## Request for Permanent Injunction

52.  Plaintiff Mustafa incorporates by reference paragraphs 1 through 51 of his Complaint as if fully set forth in this paragraph.

53.  Mustafa requests that the Court set his request for injunctive relief for a full trial on the issues in this Complaint and, after such trial, issue a permanent injunction against Xcentric ordering it to remove the defamatory posts against Mustafa.

## Prayer for Relief

54.  Based on Defendant Xcentric's conduct described above and the claims stated herein, Plaintiff Mustafa has been damaged and asks the Court for the following relief:

(a)  All injunctive relief requested in this Complaint;

(b)  All economic or other damages as shown by the evidence;

(c)  Damages for emotional distress and mental anguish;

(d)  Damages for injury to Mustafa's reputation;

(e)  Damages for lost time spent attempting to remove the defamatory posts Xcentric published or republished;

(f)  Punitive or exemplary damages;

(g)  Statutory or treble damages;

(h)  Interest, both pre- and post-judgment, as allowed by law;

(i)  Attorneys' fees, for this action and any subsequent appeals of this action;

(j)  Expert witness fees;

(k)  Costs of this action; and

(l)  Any other or additional relief permitted by law or equity and which the Court deems just and proper.

Respectfully submitted,

/s/ *Chris Bourgeacq*

Christian A. Bourgeacq
SBOT# 00795803
**THE CHRIS BOURGEACQ LAW FIRM, P.C.**
1411 West Ave., Suite 100
Austin, Texas  78701

(512) 476-1232 – phone
(888) 476-8514 – fax
chris@cbqlaw.com – email

**Attorney for Plaintiff Shakeel Mustafa**